Filed 2/11/26  P. v. Jones CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RUSSELL JONES,<br><br>Defendant and Appellant. | C102566<br><br>(Super. Ct. No. 05F01670) |

In 2007, a jury found defendant Russell Jones guilty of first degree murder and found that he committed the murder in the course of a robbery and a burglary.  In 2022, defendant filed a petition for resentencing under what is now Penal Code[1] section 1172.6.[2]  The trial court denied the petition after an evidentiary hearing.

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    Effective June 30, 2022, former section 1170.95 was recodified without substantive change to section 1172.6.  (Stats. 2022, ch. 58, § 10.)  Defendant filed his

Defendant appeals, arguing the trial court failed to determine his liability for murder beyond a reasonable doubt. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On January 21, 2005, a Sacramento County sheriff's deputy entered Daryl Sussdorf's car dealership looking for him after he failed to respond to his daughter's phone calls. The deputy found blood in many places on the first floor and followed a trail of blood to the second floor. He found Sussdorf sitting on a chair upstairs gasping for air, bleeding profusely from his head, and nonresponsive. The right rear pocket of Sussdorf's jeans had been torn from the seams, and detectives later found an empty wallet under a rolling filing cabinet on the first floor. Sussdorf had suffered 11 blows to the head from a hammer. Sussdorf died 10 days later at the hospital due to blunt force trauma to the head.

After the attack, detectives found an index card on the floor of Sussdorf's business with defendant's name on it. The following month, detectives arrested codefendant Mark Adcock who led them to defendant. The detectives had Adcock make a pretextual phone call to defendant. Adcock asked defendant if Sussdorf's wallet had been disposed of, and defendant said yes. Defendant told Adcock not to talk about Sussdorf's murder over the phone and not to talk to the police.

Sheriff's deputies then arrested defendant and interviewed him. Defendant admitted he had previously purchased cars from Sussdorf and had known him for one year. He also admitted he had been with Adcock on the day of the murder. A deputy told defendant he knew defendant had been wearing a black puffy jacket the night of the murder. Defendant said the jacket was at his mother's house and claimed someone else had given it to him. Adcock had informed the deputy that defendant had worn a pair of red gloves the night of the murder, and defendant confirmed he owned a pair of red work

petition under former section 1170.95, but we refer to the current section 1172.6 throughout this opinion.

2

gloves. He said the gloves would also be at his mother's house, but when a deputy asked if they would find traces of the red gloves at the murder scene, defendant denied the gloves were his.

The deputies then put defendant in a room with Adcock and video recorded their conversation. Defendant told Adcock that he expected to die in prison and thought that this would be a death penalty case. He also told Adcock he thought the deputies might find something incriminating on his jacket. Defendant told Adcock he was going to deny everything and asked Adcock to do the same.

Deputies then searched defendant's mother's house. They found a pair of red gloves but initially did not find the black puffy jacket. Later, deputies asked defendant's mother about the jacket, and she went and got it for them from defendant's closet. Defendant's mother had seen him wearing the jacket prior to the murder. A photograph of defendant from less than one month before the murder showed him wearing the same jacket. A criminalist tested blood from the blood stains on the jacket and determined that the blood was Sussdorf's.

A jury found defendant guilty of first degree murder and found that the murder was committed in the course of a robbery and a burglary. In a separate proceeding, the trial court found defendant had previously been convicted of two serious felonies under California's "Three Strikes" law. The court sentenced defendant to life in prison without the possibility of parole.

In 2022, defendant filed a petition for resentencing under section 1172.6. On the petition, defendant checked the box indicating that he had been "convicted of 1st degree felony murder and could not now be convicted." The petition required defendant to check the reasons he could no longer be convicted of murder and indicated that "all must apply." Despite this instruction, defendant did not mark the box to indicate that he "was not the actual killer."

3

Defendant attached several documents to his petition, including a "letter of remorse" (capitalization omitted) addressed to Sussdorf, which stated: "On January 21, 2005[,] I entered your place of business with the intent and purpose on robbing you, yes by force and by threat, but never with the intent on murdering you. . . . [¶] When I hit you with that hammer on your head and knocked you down to the ground, I forced you to respond by defending your life and for that I am truly sorry. . . . [¶] I acted as a bully and a coward who wanted to cut corners to rob and harm someone rather than to work hard to get the things I wanted and needed. I am deeply and profoundly sorry for all the harm I caused you, (which led to your death)." Defendant also attached a "letter of remorse" (capitalization omitted) addressed to the Sussdorf family, which stated: "I am very, very sorry for murdering and taking the life of Mr. Daryl Sussdorf." And defendant attached a "letter and statement of accountability" (capitalization omitted), which stated, among other things: "All this led up to the day that I entered the place and business of Mr. Daryl Sussdorf and murdered him and caused physical and emotional trauma and scars to Daryl Sussdorf and his loving family which I am deeply sorry for my action."

The prosecution conceded that defendant had made a prima facie showing of eligibility, and the trial court issued an order to show cause why defendant should not be granted relief. Prior to the hearing on the order to show cause, the prosecution filed a brief and submitted evidence, including the transcripts from defendant's trial. The prosecution argued the evidence showed beyond a reasonable doubt that defendant was still guilty of murder under current law, either as the actual killer or as a major participant in the underlying felony who acted with reckless indifference to human life.

Defendant filed a reply brief arguing the evidence did not establish beyond a reasonable doubt that he was guilty of murder under current law. He argued the court should ignore his statements taking responsibility for the robbery and murder because his meaning was unclear and he may have been pressured to make such statements. Defendant also argued he lacked the intent to be guilty of an underlying felony and that

4

hitting someone repeatedly in the head with a hammer does not necessarily constitute malice. And, if the court believed the evidence showed Adcock used the hammer, defendant argued he did not aid or abet the murder and was not a major participant acting with reckless indifference to human life.

At the hearing, the parties reiterated their arguments but did not introduce additional evidence. The trial court first explained it had read and considered the parties' briefs and all the evidence attached to the prosecution's brief. After hearing argument, the court noted that it had previously granted Adcock's resentencing petition but defendant was "in a bit of a different boat." The court indicated it believed the admissions in defendant's letters, explaining: "I don't think you admit to taking someone's life easily."

The trial court did not decide whether defendant would be guilty of robbery under current law, instead focusing on whether he committed implied malice murder. The court found that 11 blows to the head with a hammer could not indicate anything less than a mental state of implied malice, explaining: "You could say maybe one blow was not implied malice, but by the time you get to the sixth blow or the ninth blow, that is clearly -- if that's not a specific intent to kill, it is clearly a reckless disregard for human life. And then not to summon any medical assistance and have a man basically bleed out in his own business shows a callousness as well." The court found defendant was not eligible for resentencing under section 1172.6.

Defendant appeals.

DISCUSSION

On appeal, defendant contends the trial court prejudicially erred by failing to determine defendant's liability for murder beyond a reasonable doubt.[3] We disagree.

---

[3] Defendant also argues that, if trial counsel failed to preserve the issue, counsel performed ineffectively by doing so. We conclude defendant did not forfeit the issue of

5

At an evidentiary hearing pursuant to section 1172.6, subdivision (d), the burden of proof is on the prosecution to prove, beyond a reasonable doubt, that the defendant is guilty of murder under current law. (§ 1172.6, subd. (d)(3).) Defendant contends, "[T]he record fails to demonstrate that the trial court applied the proper burden of proof to the issue at hand," but this argument reverses the basic principles of appellate review that guide our consideration of this appeal. "On appeal, we presume that a judgment or order of the trial court is correct, ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' " (*People v. Giordano* (2007) 42 Cal.4th 644, 666.) " '[A] trial court is presumed to have been aware of and followed the applicable law.' " (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.) "Thus, where a statement of reasons is not required and the record is silent, a reviewing court will presume the trial court had a proper basis for a particular finding or order." (*Ibid.*)

Following these principles, we cannot agree with defendant's assertion the trial court failed to determine he was guilty of murder beyond a reasonable doubt. Both parties stated the appropriate statutory standard of proof in their briefs and the court never mentioned any other standard of proof at the hearing or in its ruling. Accordingly, defendant cannot overcome the presumption that the court knew and followed the law.

Defendant argues our presumption that the trial court knew and followed the law should be overcome because the court misstated the elements of implied malice. As relevant here, "[m]urder is committed with implied malice when 'the killing is proximately caused by " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his[, her, or their] conduct endangers the life of another and who acts with conscious disregard for

whether the trial court applied the proper standard of proof, so we do not address this second argument.

6

life.' " ' " (*People v. Reyes* (2023) 14 Cal.5th 981, 988; see §§ 187, subd. (a), 188, subd. (a)(2); CALCRIM No. 520.)

In context, and indulging all intendments and presumptions that support the trial court's order, we cannot view the court's wording as evidence that it did not understand the applicable law. When discussing what 11 blows with a hammer to the victim's head evidenced about defendant's mental state, the court stated: "You could say maybe one blow was not implied malice, but by the time you get to the sixth blow or the ninth blow, that is clearly -- if that's not a specific intent to kill, it is clearly a reckless disregard for human life. And then not to summon any medical assistance and have a man basically bleed out in his own business shows a callousness as well."

This explanation demonstrates the trial court understood the difference between express malice and implied malice and was referring to the elements of implied malice as defined in case law and the applicable jury instructions. Using the phrase "reckless disregard for human life" instead of *conscious disregard for life* in this context indicates the court was paraphrasing, not that the court applied the incorrect standard. Given the principles of appellate review, we cannot find prejudicial error for not precisely quoting the statute.

Finally, defendant contends the trial court relied on evidence from Adcock's resentencing proceedings, which means the court's order is not supported by substantial evidence. This argument should have been stated under a separate heading and supported by citation to authority. (Cal. Rules of Court, rules 8.360(a), 8.204(a)(1)(B).) Nevertheless, we will briefly dispense with the issue. The trial court mentioned Adcock's case to explain that the legal issues involved were distinct—under current law, an accomplice who never entered the building has a different path to relief under section 1172.6 than the person who has admitted killing the victim. (Compare § 189, subd. (e)(3) with §§ 187, subd. (a), 188, subd. (a)(2).) Hence, the court's conclusion that defendant was "in a bit of a different boat."

7

This legal juxtaposition does not indicate the trial court relied on improper evidence. To the contrary, the court stated what evidence it reviewed at the outset of the hearing and it did not mention the evidence in Adcock's case. Again, the principles of appellate review do not permit the conclusion that the court relied on improper evidence merely because it juxtaposed the two cases when discussing the applicable legal framework. (Cf. *People v. Jones* (2022) 86 Cal.App.5th 1076, 1092 ["In the usual case, the fact that a court did not specifically mention certain evidence does not mean that the court 'ignored' that evidence"].)

Given our presumption that the trial court did not rely on improper evidence, we have no trouble concluding the court's ruling is supported by substantial evidence. Defendant's letters admitting the robbery and murder are buttressed by the evidence from the trial and are more than sufficient to uphold the court's finding that defendant murdered Sussdorf with implied malice.

DISPOSITION

The order denying defendant's resentencing petition is affirmed.

/s/_____
ROBIE, Acting P. J.

We concur:

/s/_____
DUARTE, J.

/s/_____
KRAUSE, J.